IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **SABRINA L. BATTLE,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-13-1436 |
| **STATE OF MARYLAND DEP'T OF LABOR, LICENS'G & REGUL'N,** | * | |
|  | * | |
| Defendant | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Sabrina L. Battle filed this suit on May 15, 2013, claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Compl., ECF No. 1.) The Defendant is the State of Maryland's Department of Labor, Licensing, and Regulation ("DLLR"). Defendant was served on January 27, 2014 (ECF No. 8), and after an extension of time to answer, filed the pending motion to dismiss (ECF No. 13). Plaintiff's counsel requested and received an extension of time to file a response to the motion by April 14, 2014 (ECF Nos. 14, 15), but to date nothing has been filed in opposition to Defendant's motion. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). The motion will be granted.

*I. Service of Process*

With an original filing date of May 15, 2013, the complaint was due to be served on Defendant by September 12, 2013, which is the end of the 120-day period allowed for service under Federal Rule of Civil Procedure 4(m). Rule 4(m) states in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

On September 17, 2013, the Court ordered Battle to show cause within 14 days why the case should not be dismissed for failure to prosecute based on failure to effectuate service on Defendant by September 16, 2013.[1]  (ECF No. 3.)  In response, Battle's counsel filed an explanation of the circumstances surrounding the issue of service of process and requested that the Court extend the period for Plaintiff to effectuate service. (ECF No. 5.)  On October 2, 2013, the Court exercised its discretion to grant Plaintiff an additional 120 days to complete service of process.  (ECF No. 6.)

Defendant now contends that the extension granted Plaintiff resulted in a total period of 240 days for completion of service.  (Def.'s Mot. Supp. Mem. 4-5.)  Thus, when Defendant was served on January 27, 2014, that marked day 257 from the filing of the complaint, and, therefore, service was untimely.  (*Id.*)  Although Defendant's analysis is not unreasonable, the Court's order may have created some confusion based on what apparently was Plaintiff's interpretation, namely, that the new 120-day period effectively began on the day of the Court's order, October 2, 2013, rather than retroactively on September 13, 2013.  Under that interpretation, service on January 27, 2014, was timely.  The Court considers it the better part of discretion to rule in Plaintiff's favor, although by no means is the Court suggesting this is the only correct call.

---

[1] September 16 was actually four days past the 120-day mark.

## II. *Ninety-Day Filing Period after Receipt of Right-to-Sue Letter*

Defendant implicitly raises the question of whether the complaint was filed within 90 days after Plaintiff's receipt of the right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Mot. Supp. Mem. 4.) Defendant notes the EEOC's letter is dated February 13, 2013, Plaintiff claims to have received it "on or about February 16, 2013," and her suit was filed 91 days after the date of the letter, but 88 days from the date Plaintiff alleges she received it. (*Id.*) Although the Fourth Circuit does not embrace an "actual receipt" rule, *see Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653-54 (4th Cir. 1987) (rejecting "actual receipt" rule and embracing flexible rule: "district courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period"), the Court finds it implausible that Plaintiff should be held to have received the letter on the same date it was issued, particularly since Defendant's date stamp on the letter indicates Defendant did not receive it until February 15, 2013 (Def.'s Mot., Ex. 2). *See also Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (allowing three days for mail service under then-Rule 6(e) for presumed receipt of right-to-sue letter from EEOC). The Court accepts as true Plaintiff's allegation that she received the letter on or about February 16, 2013 (Compl. ¶ 85). Accordingly, the complaint was timely filed.

## III. *Eleventh Amendment Immunity*

It seems undisputed that the Maryland DLLR is a Maryland state agency and, therefore, entitled to whatever Eleventh Amendment immunity to which the State of Maryland is entitled. This claim of immunity has been raised against Battle's claims under the ADA and the FMLA. Defendant has rightly noted the Supreme Court's decision in *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001), which held that Congress did not, pursuant to the Enforcement

3

Clause of the Fourteenth Amendment, validly abrogate the States' Eleventh Amendment immunity to suits by private individuals for money damages under the ADA's Title I. *Id.* at 368-74 & n.9. In addition, the case of *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012), held the same as to suits for money damages under the FMLA's self-care provision. *Id.* at 1338. Maryland has not waived its immunity for suits in federal court. Md. Code Ann., State Gov't § 12-103 (LexisNexis 2009). Thus, Battle's claims under the ADA and FMLA, her second and third causes of action, will be dismissed for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## IV.  *Failure to State a Claim for Racial Discrimination*

Battle's remaining claim is that she was discriminated against on the basis of her race. Defendant asserts this part of her complaint fails to state a claim for relief and should be dismissed under Rule 12(b)(6).

### A.  *Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

### B.  *Allegations of the Complaint*

Battle states she is a black citizen who was hired by the Maryland State Department of Education ("MSDE") in May 2007 as an adult basic education teacher in MSDE's Correctional Education Division.  (Compl. ¶ 6.)  She was assigned to teach at the Baltimore City Detention Center ("BCDC").  (*Id.* ¶ 10.)  A few months later, Battle became ill with mononucleosis and was subsequently diagnosed with fibromyalgia, believed by her doctors to have been triggered by the mononucleosis.  (*Id.* ¶¶ 11, 13, 14.)  As a result of her fibromyalgia, Battle suffers from arthritis and destructive sleep apnea.  (*Id.* ¶ 16.)  Battle alleges her performance appraisals were always above standard and that she performed her duties without incident or problems until 2009.  (*Id.* ¶¶ 9, 17.)

In 2009, Battle's physicians confirmed she had acute fibromyalgia, bursitis, and destructive sleep apnea, and they determined that her medical condition was aggravated by her working conditions at BCDC.  (*Id.* ¶¶ 18, 19.)  Battle alleges that she had to climb 60 stairs every day at the BCDC in order to perform her job duties; she also alleges the BCDC "was . . . considered to be very dusty, and the facility was sprayed with pesticides at least once or twice a month."  (*Id.* ¶¶ 20, 21.)  She says that before July 2009, she "had no difficulty obtaining approval from her supervisors in order . . . to deal with her medical conditions" (*id.* ¶ 22), although she does not specify what form that approval took or how she "deal[t] with her medical conditions."  In July 2009, MSDE's Correctional Education Division was transferred from

MSDE to the Maryland DLLR; however, Battle's duty station remained at BCDC. (*Id.* ¶¶ 23, 24.)

In August 2009, Battle applied for family and medical leave; her application was supported by her primary care physician's statement certifying Battle's diagnoses of fibromyalgia, accompanied by chronic back, hip, and muscle pain, of destructive sleep apnea, and of trochanteric bursitis, which was also a cause of her hip pain. (*Id.* ¶¶ 25-29.) The physician certified Battle would need physical therapy sessions two or three times each week, that she would be unable to work during periods of incapacity of several days in length, and that her fibromyalgia caused her to have difficulty breathing, which made stair climbing difficult for her. (*Id.* ¶¶ 30, 31, 34.) In November 2009, Battle formally requested up to a year's leave of absence under the FMLA, but she was approved for only a one-month leave of absence. (*Id.* ¶¶ 35, 37.) Although she appealed the decision, Battle was unsuccessful in getting more than one month's leave, and she rescinded her request for leave. (*Id.* ¶¶ 40, 41.)

On December 16, 2009, Battle requested accommodations at work, including that she not be required to climb stairs but be allowed to use the elevator and "that she have more control over her workplace environment, so that she would not be exposed to extreme temperatures or chemicals in the air." (*Id.* ¶¶ 42-44.) Although two people from DLLR came to BCDC in January 2010 to assess the conditions there, Battle heard nothing more from them. (*Id.* ¶¶ 45-47.) After Battle was injured in an automobile accident on April 13, 2010, she was off from work until May 23, 2010. (*Id.* ¶ 48.) Her physicians approved her return to work for only a half day at a time and on the condition that she not be required to climb stairs. (*Id.* ¶ 49.) Battle was given a temporary assignment to the Maryland Training Center, located close to the BCDC, and she would not have to climb stairs there. (*Id.* ¶¶ 52-54.) Battle continued to press for resolution

of her December 2009 request for accommodations and, upon request by DLLR, she submitted additional documentation from her physicians in June 2010. (*Id.* ¶¶ 51, 55-58.) The physicians indicated that Battle needed accommodations of no stair climbing, no opening heavy doors, a more flexible work schedule to permit flexible use of leave, modification of her work space including air purification devices, and avoidance of exposure to chemicals such as cleaning products and pesticides. (*Id.* ¶ 59.)

In July 2010, Battle was offered three options as accommodations: assignment to vacant positions in Cumberland, Hagerstown, and Jessup. (*Id.* ¶ 63.) Battle did not view the commutes to Cumberland and Hagerstown as reasonable, but visited the Jessup facility on July 16, 2010. (*Id.* ¶¶ 64, 65, 67.) The next day she wrote a DLLR employee and said that although Jessup was the only reasonable site suggested, that facility's lack of air conditioning and the distance of the commute (45 minutes to one hour each way) made Jessup unattractive as a potential accommodation. (*Id.* ¶¶ 64, 67.) On August 2, 2010, Battle received a letter ordering her to report to the Jessup facility. (*Id.* ¶ 68.) Although she attempted to appeal her transfer, Battle received another letter on August 18, 2010, affirming the assignment to Jessup. (*Id.* ¶¶ 69, 70.)

Battle alleges that DLLR made room for her transfer to Jessup by transferring another teacher, Michael English, from Jessup to BCDC, that English also had a disability that restricted him from climbing stairs, and that he had requested to stay at Jessup as accommodation for his disability; English is also black. (*Id.* ¶¶ 71-74.) Battle further alleges she discovered that a nonblack female, Veronica Garcia, had received a reasonable accommodation and was permitted to work from home several days each week and to use the elevator at BCDC. (*Id.* ¶¶ 75-77.) Battle does not allege that Garcia had a disability and does not allege that Garcia was a teacher at

BCDC.[2]   Battle alleges she complied with her transfer order and reported to Jessup but immediately discovered that the commute to Jessup aggravated her medical conditions; consequently, she filed for disability retirement.  (*Id.* ¶¶ 81, 82.)  Her disability application was approved on November 16, 2010, and her last day of work was December 31, 2010.  (*Id.* ¶ 83.)

*C. Analysis*

Battle alleges she was subjected to disparate treatment when she was denied employment benefits that white and nonblack employees received.  (*Id.* ¶ 89.)  This allegation, being in the nature of a legal conclusion, need not be accepted by the Court in evaluating Defendant's motion to dismiss under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.  Consequently, it is up to the Court to determine whether a reasonable inference of disparate treatment may be drawn from the allegations in her complaint.

The Supreme Court has held that a plaintiff in an employment discrimination case need not allege specific facts to establish a *prima facie* case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).  *See also Twombly*, 550 U.S. at 569 (clarifying that newly announced standard of "enough facts to state a claim to relief that is plausible on its face" did not run contrary to *Swierkiewicz*'s holding).  However, it is clear that Battle's complaint rests upon her attempt to set forth the elements of a *prima facie* case by alleging that Garcia, who is not black, received an accommodation to use the elevator when Battle, who is black, was not given the same accommodation.  Thus, although Battle need not plead the elements of a *prima facie* case, that, in fact, is the route she has elected to take in her complaint.

---

[2] In her EEOC charge, Battle stated Garcia is a psychologist who requested accommodation based on her pregnancy.  (Def.'s Mot. Dismiss, Ex. 1.)  Because Battle has relied upon her EEOC charge in her complaint and because she has not contested its authenticity, the Court will consider it in evaluating Defendant's motion.  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

The essence of the theory of disparate treatment is that it "constitutes discrimination only if the objects of the disparate treatment are, for the relevant purposes, similarly situated." *Camps Newfoundland/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 601 (1997) (Scalia, J., dissenting). *See also General Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997) ("Conceptually, of course, any notion of discrimination assumes a comparison of substantially similar entities."); *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 19 (1980) ("An employer 'discriminates' against an employee only when he treats that employee less favorably than he treats others similarly situated."). As for Title VII's proscription on certain employment practices, the Supreme Court has stated, "The emphasis of both the language and the legislative history of the statute is on eliminating discrimination in employment; similarly situated employees are not to be treated differently solely because they differ with respect to race, color, religion, sex, or national origin." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71 (1977).

It is not reasonable to infer from Battle's complaint that she and Garcia are similarly situated individuals. Although Battle alleges that English, who is black, is also a teacher with a disability that calls into question his ability to climb stairs, nowhere in Battle's complaint is there any allegation that Garcia, who is not black, has similar job duties and a similar disability. If Garcia does not have similar job duties to Battle at BCDC (irrespective of their job titles), and if Garcia does not also have a similar disability, then it is not reasonable to infer that she and Battle are similarly situated individuals. The Court notes that Battle alleges Garcia was permitted to work from home several days each week. The obvious inference from this allegation is that she is not a teacher whom one would expect to be on the work site engaged in teaching students on a daily basis. (*Cf.* Compl. ¶ 20 ("In order to perform her duties at the Baltimore City Detention Center, Ms. Battle had to climb 60 stairs *every day*." (Emphasis added).) Thus, if Battle was

required to be on site every work day and Garcia was not, it is reasonable to infer that Garcia's and Battle's job duties are dissimilar. Furthermore, Battle's EEOC complaint also indicates Garcia's accommodation was due to her pregnancy, which is universally recognized to be a temporary condition, not permanent. Battle's complaint is clear that she was seeking a permanent accommodation rather than a temporary one. These differences undermine Battle's implicit allegation that she and Garcia were similarly situated. As a result, Battle's complaint fails to state a claim of disparate treatment under Title VII.

## *V. Conclusion*

The Court lacks subject-matter jurisdiction over Battle's claims in the second and third counts under the ADA and the FMLA, and those claims will be dismissed pursuant to Rule 12(b)(1). Battle has failed to state a claim for relief in the first count under Title VII, and that claim will be dismissed under Rule 12(b)(6). A separate order will issue.

DATED this 7th day of May, 2014.

BY THE COURT:

/s/
James K. Bredar
United States District Judge